■ In the Matter of BRENT B. ELLIS, Appellant, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.—Levine, J.

Petitioner is a tenured teacher, certified in industrial arts and driver education, in the Frontier Central School District in Erie County. In June 1981, just before the school year ended, he was arrested and criminally charged in connection with causing a traffic fatality. The incident and petitioner's

arrest were at the time extensively reported in the electronic and print news media of the area as a "hit and run" accident in which defendant's vehicle struck and killed a teen-ager on a bicycle and injured a second youth. Petitioner continued to teach until the final disposition of the criminal charges against him. On September 13, 1982, he pleaded guilty to criminally negligent homicide and the following November was sentenced to serve a term of one year in the county jail. These events were also publicized. After petitioner was convicted and sentenced, respondent Board of Education of the Frontier Central School District (the Board) preferred charges against him pursuant to Education Law § 3020-a of conduct unbecoming a teacher and neglect of duty (Education Law § 3012 [2] [a], [b]), arising out of his conviction, sentence and incarceration. Petitioner was suspended following his release on parole.

A section 3020-a tenure hearing panel was convened and, after its proceedings were concluded, exonerated petitioner of both charges, with one panel member dissenting. The Board appealed to respondent Commissioner of Education (the Commissioner), who reversed the hearing panel as to the charge of conduct unbecoming a teacher and imposed a penalty of a two-year suspension without pay. Petitioner then brought the instant CPLR article 78 proceeding to review the Commissioner's determination and now appeals from the dismissal of the petition by Special Term.

On appeal, petitioner's arguments for reversal and annulment are twofold. On the merits, petitioner contends that the charge of conduct unbecoming a teacher was not substantiated here because his conviction for criminally negligent homicide did not entail moral turpitude, was merely negligent rather than intentional and because the Board did not establish any nexus between petitioner's conduct and his ability to teach, as demonstrated by the absence of any incidents or complaints during the more than one year that he continued to conduct classes between the dates of his arrest and sentence.

We disagree. When one of the parties appeals to the Commissioner from the findings of a tenure hearing panel, the appeal is governed by the principles and procedures generally applied to the Commissioner's appellate jurisdiction under Education Law article 7 (Education Law §§ 310, 311, 3020-a [5]). The standard for judicial review is, therefore, whether the determination to overrule the panel violated lawful procedure, was affected by an error of law or was arbitrary or capricious and, thus, lacked a rational basis (CPLR 7803 [3]; *Matter of*

*Conley v Ambach,* 61 NY2d 685, 687-688; *Matter of Strongin v Nyquist,* 44 NY2d 943, 945, *appeal dismissed* 440 US 901). It was rational and proper for the Commissioner to have found that petitioner's conviction of a felony and his incarceration for causing the death of a high school-aged youth by criminal negligence, i.e., his failure to perceive a "substantial and *unjustifiable* risk" to the extent that the omission constituted "a *gross* deviation" from the standard of care expected of a reasonable person (Penal Law § 15.05 [4] [emphasis supplied]; *see,* § 125.10), together with the attendant widespread publicity of the incident and of petitioner's conviction and sentence to a term of imprisonment, presented a prima facie case of conduct unbecoming a teacher. As the Supreme Court has observed: "a teacher serves as a role model for his students, exerting a subtle but important influence over their perceptions and values. Thus, through both the presentation of course materials and the example he sets, a teacher has an opportunity to influence the attitudes of students toward government, the political process, and a citizen's social responsibilities" *(Ambach v Norwick,* 441 US 68, 78-79). Petitioner's conviction established that he had grossly deviated from the standard of care a responsible citizen owes to other users of the public highways. It was hardly irrational for the Commissioner to infer that this well-publicized dereliction by a teacher would adversely impact on his ability to "function as an example for students" *(supra,* at p 80), particularly youths just converging on the significant adolescent milestone of learning to drive.

The adverse effect of this particular notorious conviction and sentence on a teacher's legitimate function as a wholesome object of student emulation is so self-evident that, to whatever degree *Matter of Jerry v Board of Educ.* (35 NY2d 534, 543-544) may be read as requiring a demonstration of some actual impairment of teaching performance before private, out of school misconduct can be the basis of disciplining a teacher, it is totally inapposite here *(see, Matter of Caravello v Board of Educ.,* 48 AD2d 967). For the same reason, that it may be debatable whether criminal negligence constitutes moral turpitude *(see, People v Futterman,* 86 AD2d 70, 72-73) does not render petitioner's conduct immune from professional sanctions. Immoral character, whether or not manifested by criminal conduct, is a statutory ground for disciplinary removal of a teacher separate and distinct from that of conduct unbecoming a teacher (Education Law § 3012 [2] [a]).

No constitutional infringement of petitioner's rights were

involved here in the Commissioner's application of a rebuttable presumption of petitioner's temporary unfitness to teach (in the broad sense already discussed) to the circumstances of the conviction here *(see, Pordum v Board of Regents,* 491 F2d 1281, 1287, n 14, *cert denied* 419 US 843). Nor was it irrational for the Commissioner to have given little, if any, weight to the fact that petitioner was permitted to teach and did so without incident or complaint during the period between his arrest and sentence, since those circumstances bear little relevance to the "subtle but important influence over [student] perceptions and values" *(Ambach v Norwick, supra,* pp 77-78) of the final disposition of petitioner's criminal charges, and not merely his arrest, which the Commissioner rationally found to be critical here.

Petitioner's alternative argument for reversal is that the Commissioner applied an erroneous standard of proof in overruling the hearing panel. This contention is entirely based upon the statement in the Commissioner's decision, following a recital of the uncontested facts surrounding petitioner's conviction and sentence and the conclusions drawn therefrom, that "there is substantial evidence of [petitioner's] guilt of the charge of conduct unbecoming a teacher". Petitioner, relying upon the holding in *Matter of Martin v Ambach* (67 NY2d 975, 977) that a section 3020-a hearing panel must make its initial determination on a basis of a preponderance of the evidence, urges that the same standard must be applied by the Commissioner when he reverses a panel determination exonerating a teacher. We may assume, arguendo, that when the Commissioner exercises his well-established authority to substitute his own findings sustaining charges against a teacher for contrary findings by a hearing panel *(see, Matter of Levyn v Ambach,* 85 AD2d 792, 793, *affd* 56 NY2d 912; *Matter of Shurgin v Ambach,* 83 AD2d 665, 666, *affd* 56 NY2d 700), he must apply a preponderance of the evidence standard of proof. That proposition, however, says nothing more than that in a teacher disciplinary matter, the risk of nonpersuasion is imposed upon the School Board and not the teacher *(see,* James, *Burdens of Proof,* 47 Va L Rev 51, 52-53). That is, the Commissioner, in substituting himself as the trier of fact, is instructed that he must believe that the existence of the fact of teacher misconduct is more probable than its nonexistence before he may find in favor of the School Board and against the teacher *(see, In re Winship,* 397 US 358, 371-372 [Harlan, J., concurring]).

Acceptance of the principle that the Commissioner was

obliged to apply a preponderance of the evidence standard is, however, of no aid to petitioner here. A fair reading of the Commissioner's decision herein clearly establishes that he indeed weighed the evidence and found that it preponderated in favor of sustaining the charge of conduct unbecoming a teacher. The Commissioner inferred from the facts and circumstances of petitioner's conviction that his ability to serve as a role model was diminished, further found unpersuasive the facts of his postarrest performance of teaching duties as a rebuttal of the evidence of unfitness and made an express finding of ultimate fact that petitioner was guilty of conduct unbecoming a teacher. Thus, the decision when read as a whole reveals not only that the Commissioner found the existence of substantial evidence of conduct unbecoming a teacher, but that he was persuaded by that evidence that the charge was true. No more is required under a preponderance of evidence standard. Accordingly, petitioner has not sustained his assertion that the determination under review was affected by an error of law in the Commissioner's application of an improper standard of proof.

We have reviewed petitioner's remaining objections concerning the stay of the affect of the hearing panel's determination, the Commissioner's failure to grant petitioner oral argument and the validity of the penalty imposed, and find them also to be without merit.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.